MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
JORGE YEPES and JULIO CESAR
ESQUIVEL RIVERA, *individually and on*
*behalf of others similarly situated,*

*Plaintiffs*,

-against-

EL TIO PIO WEST INC. (D/B/A TIO PIO), EL
TIO PIO CORP. (D/B/A TIO PIO), PIO
BAGEL EIGHT INC. (D/B/A PIO BAGEL),
JAVIER ESPINOZA, PATRICIO ESPINOZA,
CARLOS     ESPINOSA,     PATRICIA
ESPINOZA, and NARCISA ESPINOZA,

*Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Jorge Yepes and Julio Cesar Esquivel Rivera , individually and on behalf of

others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against El Tio Pio West Inc.

(d/b/a Tio Pio), El Tio Pio Corp. (d/b/a Tio Pio), Pio Bagel Eight Inc. (d/b/a Pio Bagel),

("Defendant Corporations"), Javier Espinoza, Patricio Espinoza, Carlos Espinosa, Patricia

Espinoza, and  Narcisa Espinoza, ("Individual Defendants"), (collectively, "Defendants"), allege

as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants El Tio Pio West Inc. (d/b/a Tio Pio), El Tio Pio Corp. (d/b/a Tio Pio), Pio Bagel Eight Inc. (d/b/a Pio Bagel), Javier Espinoza, Patricio Espinoza, Carlos Espinosa, Patricia Espinoza, and Narcisa Espinoza.

2.      Defendants own, operate, or control three Latin American restaurants located at 46 W 36th St, New York, NY 10018 (the "Manhattan location"), 78 Willoughby St., Brooklyn, NY 11201 (the "Willoughby street location"), and at 119 Court St, Brooklyn, NY 11201 (the "Court street location"), under the name "Tio Pio"; and a Bagel shop located at 136 Lawrence St, Brooklyn, NY 11201(the "Lawrence street location"), under the name "Pio Bagel".

3.      Upon information and belief, individual Defendants Javier Espinoza, Patricio Espinoza, Carlos Espinosa, Patricia Espinoza, and Narcisa Espinoza, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiffs were employed as food preparers, dishwashers, delivery workers, salad preparers, grillers and cooks mainly at the restaurant located at 46 W 36th St, New York, NY 10018.

6.      However, Plaintiff Jorge Yepes also worked for Defendants at the Willoughby street location for approximately two weeks and at the Lawrence street location for approximately a month and a half.

7.      From approximately May 2011 until on or about March 2015, Plaintiff Jorge Yepes was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to cleaning the

restaurant, washing dishes, sweeping, mopping, bringing things such as sodas up from the basement, stocking deliveries and arranging the basement and cleaning his stations (hereafter the "non-tipped duties").

8.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

9.      Rather, Defendants failed to maintain accurate recordkeeping of the hours, failed to pay Plaintiffs appropriately for any hours, either at the straight rate of pay or for any additional overtime premium.

10.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

11.     Furthermore, Defendants repeatedly failed to pay Plaintiff Jorge Yepes's wages on a timely basis.

12.     From approximately May 2011 until on or about March 2015, Defendants employed and accounted for Plaintiff Jorge Yepes as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

13.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Jorge Yepes's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

14.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Jorge Yepes's actual duties and payroll records by designating him as a delivery worker instead of a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Jorge Yepes at the minimum wage rate and enabled them to pay him below the minimum

wage rate.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district,

Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Latin American restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.    Plaintiff Jorge Yepes ("Plaintiff Yepes" or "Mr. Yepes") is an adult individual residing in Bronx County, New York. Plaintiff Yepes was employed by Defendants at Tio Pio (the Manhattan and Willoughby street locations) and at Pio Bagel from approximately May 2011 until on or about March 2015 and then from approximately July 2015 until on or about March 1, 2018.

22.    Plaintiff Julio Cesar Esquivel Rivera ("Plaintiff Esquivel" or "Mr. Esquivel") is an adult individual residing in Bronx County, New York. Plaintiff Esquivel was employed by Defendants at Tio Pio (the Manhattan location) from approximately June 2017 until on or about October 2017.

*Defendants*

23.    At all relevant times, Defendants owned, operated, or controlled three Latin American restaurants under the name "Tio Pio" and a Bagel shop under the name "Pio Bagel".

24.    Upon information and belief, El Tio Pio West Inc. (d/b/a Tio Pio) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 46 W 36th St, New York, NY 10018.

25.    Upon information and belief, El Tio Pio Corp. (d/b/a Tio Pio) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 78 Willoughby St., Brooklyn, NY 11201.

26.    Upon information and belief, Pio Bagel Eight Inc. (d/b/a Pio Bagel) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 136 Lawrence St., Brooklyn, NY 11201.

27.    Defendant Javier Espinoza is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Javier Espinoza is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Javier Espinoza possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Patricio Espinoza is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Patricio Espinoza is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Patricio Espinoza possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Carlos Espinosa is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Carlos Espinosa is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Carlos Espinosa possesses operational control over Defendant Corporations, an ownership interest

in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Patricia Espinoza is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Patricia Espinoza is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Patricia Espinoza possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant Narcisa Espinoza is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Narcisa Espinoza is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Narcisa Espinoza possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32.    Defendants operate three Latin American restaurants and a Bagel shop located in the Midtown East of Manhattan and the Downtown Brooklyn sections of Brooklyn in New York City.

33.    Individual Defendants, Javier Espinoza, Patricio Espinoza, Carlos Espinosa, Patricia Espinoza, and Narcisa Espinoza, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

34.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

35.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

37.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

38.    Upon information and belief, Individual Defendants Javier Espinoza, Patricio Espinoza, Carlos Espinosa, Patricia Espinoza, and Narcisa Espinoza operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of their own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

39.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40.    In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

42.     Plaintiffs are former employees of Defendants who were employed as food preparers, dishwashers, salad preparers, grillers, cooks and ostensibly as delivery workers. However, when ostensibly employed as delivery workers they spent over 20% of each shift performing the non-tipped duties described above.

43.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jorge Yepes*

44.     Plaintiff Yepes was employed by Defendants from approximately May 2011 until on or about March 2015 and then from approximately July 2015 until on or about March 1, 2018.

45.     Defendants employed Plaintiff Yepes as a food preparer, a dishwasher, a salad preparer, a griller, a cook and ostensibly a delivery worker.

46.     However, when ostensibly employed as a delivery worker, Plaintiff Yepes was also required to spend a significant portion of his work day performing the non-tipped duties described above.

47.     Although Plaintiff Yepes ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

48.     Plaintiff Yepes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

49.     Plaintiff Yepes's work duties required neither discretion nor independent judgment.

50.    Throughout his employment with Defendants, Plaintiff Yepes regularly worked in excess of 40 hours per week.

51.    From approximately March 2012 until on or about June 2014, Plaintiff Yepes worked as a food preparer, a dishwasher, a delivery worker, a salad preparer, a griller and a cook from approximately 6:00 a.m. until on or about 4:30 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 6:00 p.m., Saturdays (typically 63.5 hours per week).

52.    From approximately July 2014 until on or about March 2015 and then from approximately July 2015 until on or about December 2017, Plaintiff Yepes worked as a food preparer, a dishwasher, a delivery worker, a salad preparer, a griller and a cook from approximately 6:00 a.m. until on or about 4:15 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 4:15 p.m., Saturdays (typically 60.5 hours per week).

53.    From approximately January 2018 until on or about March 1, 2018, Plaintiff Yepes worked as a salad preparer, a griller and a cook from approximately 6:00 a.m. until on or about 3:15 p.m. or from approximately 7:00 a.m. until on or about 4:00 p.m., Mondays through Fridays and from approximately 7:30 a.m. until on or about 4:15 p.m., Saturdays (typically 55 hours per week).

54.    Throughout his employment, Defendants paid Plaintiff Yepes his wages in cash.

55.    From approximately March 2012 until on or about March 2015, Defendants paid Plaintiff Yepes a fixed salary of $350 per week.

56.    From approximately July 2015 until on or about December 2015, Defendants paid Plaintiff Yepes $10.00 per regular and overtime hours.

57.    From approximately January 2016 until on or about June 2016, Defendants paid Plaintiff Yepes $10.50 per regular and overtime hours (but only for 59 hours).

58.    From approximately July 2016 until on or about December 2016, Defendants paid Plaintiff Yepes $11.00 per regular and overtime hours (but only for 59 hours).

59.    From approximately January 2017 until on or about July 2017, Defendants paid Plaintiff Yepes $11.50 per regular and overtime hours (but only for 59 hours).

60.    From approximately August 2017 until on or about March 1, 2018, Defendants paid Plaintiff Yepes $12 per regular and overtime hours (but only for 59 hours until December 2017 and for 54.5 hours until March 2018).

61.    Plaintiff Yepes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

62.    For example, Defendants required Plaintiff Yepes to work an additional 30 minutes past his scheduled departure time on weekdays and up to 2 hours past his scheduled departure time on Saturdays from approximately 2012 until on or about 2014 and 15 minutes past his departure time every day from approximately 2014 until on or about 2018, and did not pay him for the additional time he worked.

63.    From approximately March 2012 until on or about March 2015, Plaintiff Yepes was never notified by Defendants that his tips were being included as an offset for wages.

64.    During this period, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Yepes's wages.

65.    Plaintiff Yepes was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

66.    From approximately March 2012 until on or about December 2017, Defendants required Plaintiff Yepes to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

67.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Yepes regarding overtime and wages under the FLSA and NYLL.

68.    Defendants did not provide Plaintiff Yepes an accurate statement of wages, as required by NYLL 195(3).

69.    Defendants did not give any notice to Plaintiff Yepes, in English and in Spanish (Plaintiff Yepes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

70.    Defendants required Plaintiff Yepes to purchase "tools of the trade" with his own funds—including kitchen shoes twice a year.

### Plaintiff Julio Cesar Esquivel Rivera

71.    Plaintiff Esquivel was employed by Defendants from approximately June 2017 until on or about October 2017.

72.    Defendants employed Plaintiff Esquivel as a food preparer and ostensibly as a delivery worker.

73.    However, Plaintiff Esquivel was also required to spend a significant portion of his work day performing the non-tipped duties described above.

74.    Although Plaintiff Esquivel ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

75.    Plaintiff Esquivel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

76.    Plaintiff Esquivel's work duties required neither discretion nor independent judgment.

77.    Throughout his employment with Defendants, Plaintiff Esquivel regularly worked in excess of 40 hours per week.

78.    From approximately June 2017 until on or about October 2017, Plaintiff Esquivel worked as a food preparer and a delivery worker from approximately 7:00 a.m. until on or about 7:15 p.m. to 7:30 p.m., 6 days a week (typically 73.5 to 75 hours per week).

79.    Throughout his employment, Defendants paid Plaintiff Esquivel his wages in cash.

80.    From approximately June 2017 until on or about October 2017, Defendants paid Plaintiff Esquivel $11.00 per regular and overtime hours (but only for 72 hours).

81.    Plaintiff Esquivel's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

82.    For example, Defendants required Plaintiff Esquivel to work an additional 15 to 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

83.    Plaintiff Esquivel was never notified by Defendants that his tips were being included as an offset for wages.

84.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Esquivel's wages.

85.    Plaintiff Esquivel was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

86.    Defendants required Plaintiff Esquivel to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

87.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Esquivel regarding overtime and wages under the FLSA and NYLL.

88.    Defendants did not provide Plaintiff Esquivel an accurate statement of wages, as required by NYLL 195(3).

89.    Defendants did not give any notice to Plaintiff Esquivel, in English and in Spanish (Plaintiff Esquivel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

90.    Defendants required Plaintiff Esquivel to purchase "tools of the trade" with his own funds—including a bicycle, a vest and bicycle accessories.

*Defendants' General Employment Practices*

91.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

92.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

93.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

94.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

95.    Defendants required Plaintiffs and all delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

96.    From approximately March 2012 until on or about March 2015, Plaintiff Yepes and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

97.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

98.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

99.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

100.    In violation of federal and state law as codified above, from approximately March 2012 until on or about March 2015, Defendants classified Plaintiff Yepes as a tipped employee, and paid him at a rate that was below minimum wage when they should have classified him as non-tipped employee and paid him at the minimum wage rate.

101.    Defendants failed to inform Plaintiffs that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

102.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

103.    Defendants failed to maintain a record of tips earned by Plaintiffs for the tips they received.

104.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

105.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

106.    Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in order to release their wages.

107.    Plaintiffs were paid their wages in cash.

108.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

109.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

110.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

111.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

112.   Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours ; and the number of overtime hours , as required by NYLL §195(3).

113.   Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

114.   Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

115.   At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

116.   The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

117.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

118.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

119.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

120.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

121.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

122.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

123.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

124.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

125.    At all times relevant to this action, Defendants were Plaintiff s' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

126.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

127.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

128.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

129.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

131.   Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

132.   Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

133.   Plaintiffs (and the FLSA class member) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

134.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.   Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

136.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

137.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

140.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

141.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

144.   Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

145.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

146.   With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours ; and the number of overtime hours , as required by NYLL 195(3).

147.   Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

148.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.   Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

150.   Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

151.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

152.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

153.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        March 6, 2018

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                            By:     _____/s/ Michael Faillace_____
                                    Michael Faillace [MF-8436]
                                    60 East 42nd Street, Suite 4510
                                    New York, New York 10165
                                    Telephone: (212) 317-1200
                                    Facsimile: (212) 317-1620
                                    *Attorneys for Plaintiffs*

- 26 -

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

March 5, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jorge Yepes

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                       Jorge Yepes

Date / Fecha:                             5 de marzo 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 5, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Julio Cesar Esquivel Rivera

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                5 de marzo 2018

*Certified as a minority-owned business in the State of New York*