UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JORGE YEPES *et al*

               Plaintiffs,

                                  1:18-CV-02038 (CM)

      -against-

EL TIO PIO WEST INC. *et al*

               Defendants.
-----------------------------------------------------X

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

The Law Office of Heidi J. Meyers
11 Broadway, Suite 925
New York, NY 10004
Tel: (212) 791-4007
*Attorney for Defendants*

## **TABLE OF CONTENTS**

**PAGE**

Table of Authorities…………………………………………………………………………1

Table of Exhibits……………………………………………………………………………..3

Background……………………………………………………………………………..4

Standard of Review…………………………………………………………………………..8

Argument…………………………………………………………………………………9

Conclusion…………………………………………………………………………………19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ....................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................................................... 6

*Brennan v. Arnheim & Neely*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973)14

*Brennan v. Veterans Cleaning Serv., Inc.,* 482 F.2d 1362, 1367 (5th Cir.1973)) ............ 14

*Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692-93 (4th Cir.1990) ....... 14

*Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984) ................. 14

*Durling, et al. v. Papa John's International, Inc.*, (SDNY 2017). ................................... 18

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)) ................................ 16

*Iglesias-Mendoza v. La Belle Farm. Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).......... 16

*Lynch v. City of New York*, Case No, 16-cv-5677 (KBF) (SDNY 2017). ........................ 18

*Myers v. Hertz Corp.*, 624 F.3d 537 at 554-55 (2d Cir. 2010). ........................................ 16

**Rules**

Rule 12(b)(6)...................................................................................................................... 6

Fed. R. Civ. P. 8(a)(2)........................................................................................................ 7

**Regulations**

29 C.F.R. § 779.206(a)...................................................................................................... 15

29 C.F.R. § 779.217 .......................................................................................................... 16

28 U.S.C. §1367 ................................................................................................................ 19

29 U.S.C. § 203(r)............................................................................................................. 15

29 U.S.C. § 203(s).......................................................................................................... 8, 19

29 U.S.C. §216(b). ............................................................................................................ 17

29 U.S.C. § 203(s)(1)(A)(i) & (ii)...................................................................................... 7

## TABLE OF EXHIBITS

Ex. A.    Declaration of Defendant Narcisa Espinoza in Support of Motion to Dismiss

Ex. B.    Declaration of El Tio Pio West Inc., employee, Christina Campbell

Ex. C.    Declaration of El Tio Pio West Inc., employee, Diana Marisela Saca Naula

Ex. D.    Letter dated March 7, 2016 from Defendant, Narcisa Espinoza reprimanding Plaintiff, Jorge Yepes

Ex. E.    Letter dated March 2, 2018 from Defendant, Narcisa Espinoza informing Plaintiff, Jorge Yepes of his sick day.

Ex. F.    Certification of Incorporation of El Tio Pio West, Inc.

Ex. G.    Inc., letter from Certified Public Accountant, Jerrold Hirsch certifying that El Tio Pio West Corp tax returns were filed.

Ex. H.    El Tio Pio Inc., U.S. Income Tax Returns for an S Corporation from 2011 to 2016

Ex. I.    NY Department of State Division of Corporations for El Tio Pio West Inc., El Tio Pio West Inc., and Pio Bagel 8 Inc.

Ex. J.    Declaration of Defendant Javier Espinoza along with copy of fingerprint machine and pictures of Department of Labor notices posted at Pio Bagels

Ex. K.    Declaration of Defendant Carlos Espinoza in Support of Defendants' Motion to Dismiss

Ex. L.    Declaration of Defendant Juan Patricio Espinoza

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JORGE YEPES *et al*

               Plaintiffs,                  1:18-CV-02038 (CM)

      -against-                **DEFENDANTS' MEMORANDUM**
                                         **IN SUPPORT OF MOTION**
EL TIO PIO WEST INC. *et al*            **TO DISMISS**
                    Defendants.
------------------------------------------------------X

       DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants, by and through undersigned Counsel, hereby move to dismiss the Complaint, for the reasons set forth below.

     I.      BACKGROUND

Defendant, El Tio Pio West Inc, ("Tio Pio West"), 46 West 36th Street, New York, NY, incorporated in New York State in November 2006, has been doing business since around or about 2008. It is a small, primarily take-out, restaurant in Manhattan, New York.  There is no wait staff, although there are a few tables for customers to sit down. Over the years, the restaurant has had generally six to eight employees, and always less than ten employees.

According to its Forms 1120S, tax returns for an S corporation, from 2012 through 2016, Tio Pio West's annual gross revenues for each and every year have been below $500,000. In 2012, gross revenues were $180,036; in 2013, gross revenues were $303,516; in 2014, gross revenues were $331,100; in 2015, gross revenues were $388,248; and in 2016, gross revenues were $483,887.

The corporation does have four shareholders, each of the named individual defendants, Javier Espinoza, Carlos Espinoza, Juan Patricio Espinoza and Narcisa Espinoza, each holding 25% of the shares.

However, Defendant Narcisa Espinoza ("Narcisa") has been the sole manager and one person responsible for the day-to-day operations and for determining all employee policies and practices for Tio Pio West, including hiring and firing, establishing the schedules of Plaintiffs, maintaining Plaintiffs' employee records, and determining the wages and compensation of Plaintiffs, from 2012 to present.

Narcisa is a hard-working immigrant, whose highest level of education is a high school degree abroad, and whose English is poor. She is also a wife and mother. She has managed to seek out a living running her small business.

At least two of her employees report that she is a wonderful boss, and provides good working conditions for them.  Diana Marisela Saca Naula (Saca Naula) and Christina Campbell both report that she pays them for all their hours, at or above the minimum wage, that she allows them to take time off for personal matters, and that she pays them for sick days and vacation days. They both report that they do not work overtime. Narcisa and the two employees report that the restaurant has a board with all required postings for the employees, in a conspicuous place in the workplace.

Narcisa reports that she always paid Plaintiffs at or above the minimum wage, did not reduce the wages for any tip credit, and did not keep track of the Plaintiffs' tips, which they were allowed to keep. So, their total pay was above the minimum wage, as they had not only their salary, but kept whatever tips they earned.

However, Plaintiffs Yepes and Esquivel created a hostile work environment, with their bad temper, constant racist remarks, and Yepes' demeaning attitudes towards women in general and the darker-skinned employees in particular.  They report that Plaintiffs Yepes and Esquivel taunted the female co-worker, Christina Campbell calling her "monkey" ("mono" in Spanish), "the jungle

chongolian", and "black" ("negra" in Spanish), and by imitating monkeys.  Plaintiff Yepes referred to Narcisa and his female co-workers as "pinches viejas" (meaning "F—ing old hags"), "cabronas", (in English "bastard") or worse.  These are just a few examples.  He constantly cursed and used vulgar language. He did not speak like this in front of Narcisa, but as soon as her back was turned he would rant on against his co-workers.

Employee Saca Naula reports that Plaintiff Yepes' violent temper and derogatory, demeaning remarks made her constantly nervous and on edge, and that she developed migraine headaches due to the stress caused by having to work with him.  She would also often burst out crying after he made a verbal attack.

Employee Campbell reports that she became withdrawn and depressed and started to dread going to work, because of both Plaintiffs Yepes and Esquivel's ganging up on her and using racial epithets constantly against her.  Both employees are greatly relieved that Plaintiffs Yepes and Esquivel no longer work at Tio Pio West.

Additionally, Plaintiff Yepes also bullied other male employees, and got into a fist fight with one male co-worker, throwing him to the ground and making him cry.

Narcisa reprimanded Plaintiff Yepes repeatedly for his bad behavior, to no effect. Plaintiff Yepes viewed other employees as threats to his own position at the restaurant, as he continually demanded to be given more than 40 hours of work every week, and every time Narcisa gave hours or work to another employee, he viewed that as diminishing his own work and standing at the restaurant.

Plaintiff Yepes regularly worked more hours than any of the other employees, because he continually insisted on doing so.  Plaintiff Julio Cesar Esquivel Rivera ("Esquivel") also demanded to work many hours, and was also jealous of any work or hours given to other employees.  Plaintiff

5

Esquivel wanted to hog all the deliveries to himself, because he earned not only his $11 per hour wage, but also the tips which he kept.  Thus, his total pay was much more than $11 per hour.  When Narcisa gave deliveries to another employee, he would become angry.  Conversely, if there was a customer who did not tip, he would refuse to make the delivery to that customer and insist that someone else do it.  Customers complained about his rude attitude, and Tio Pio West lost customers because of Esquivel's bad behavior.

The racist, sexist and aggressive behavior of Plaintiffs Yepes and Esquivel have damaged Defendant Narcisa and Tio Pio West, as their behavior caused loss of productivity, damaged the reputation of the restaurant and caused loss of customers and revenues, and moreover they intentionally inflicted emotional distress on her and employees.  This behavior damaged the health of at least three employees.  Moreover, Plaintiff Yepes' aggressive racist and sexist behavior has caused damage to Defendants Narcisa and Tio Pio West and to their employees.

Defendant El Tio Pio Corp, 78 Willoughby Street New York, NY, is a separate corporation, incorporated in 2002. Defendant El Tio Pio Corp is under the separate management of Defendant Carlos Espinoza, who has separate employment policies and practices from those of Narcisa at Tio Pio West.

Defendant Pio Bagel 8 Inc, 136 Lawrence Street, Brooklyn NY, is also a separate corporation, incorporated in 2014, and which has been doing business since July 2015. Pio Bagel 8 Inc is under the separate management of Javier Espinoza, who has different employment policies and practices from those of Narcisa at Tio Pio West.

There is no such person as the named Defendant "Patricia Espinoza". Such a person does not exist.  The correct name for the named Defendant "Patricio Espinoza" is Juan Patricio Espinoza.

II.      STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level .... " *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id*; *see also Iqbal*, 556 *U.S. at 679* ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

III.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANTS NARCISA ESPINOZA AND EL TIO PIO WEST INC., BECAUSE GROSS REVENUES FOR EACH AND EVERY YEAR FROM 2012 TO 2016 HAVE BEEN BELOW $500,000.

El Tio Pio West Inc, 46 West 36th Street NY NY, is a small business not covered under the FLSA. According to the statute, to be covered under the FLSA, an enterprise:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... [its] annual gross volume of sales made or business done is not less than $500,000 ....

29 U.S.C. § 203(s)(1)(A)(i) & (ii).

An FLSA federal lawsuit, even if eventually found to be frivolous, or even if the small business owes only a negligible amount of money to an employee, can end up bankrupting a small business, because of the enormous amount of time taken away from work and attendant loss of productivity, as well as just paying the attorneys' fees.  In 1989, Congress enacted a $500,000 threshold intended to protect small businesses, so that they would not be driven out of business, and so they could keep providing jobs for their workers.

As first enacted in 1938, the FLSA exempted small, service establishments:

> The Fair Labor Standards Act initially applied largely to industrial employees. Significant numbers of workers were exempt (or not covered) by its provisions: for example, agricultural, retail and service workers (including public employees) and those who would be defined as not being engaged in interstate commerce. In this manner, among other things, a substantial number of workers employed by small businesses were excluded from the act....

U.S. Congressional Research Service, The Fair Labor Standards Act: Continuing Issues in the Debate, William G. Whittaker (May 2008), at 15.

Much of the early argument against the minimum wage was framed in terms of small business. Some argued that "the tremendous amount and prohibitive cost of the bookkeeping and records involved" would make payment of the minimum wage inequitable for small business and involve such businesses in processes "with which they are unfamiliar."60

*Id*. at 16. The case for a small business exemption was termed a defense of employees of small firms who would be harmed if profits for their employers were affected:

"It is the little fellow for whom I am talking," observed one Member. "It is the little industries in my district that are giving employment to those few people situated way up on the mountains and out in the country that cannot pay this wage. Those people," he suggested, "will be out of employment."

*Id*., quoting Congressional Record, May 23, 1938, p. 7238.

In 1977, a small business exemption was set at $362,500.  In 1989, the FLSA was amended and Congress adopted a small business exemption for those grossing less than $500,000, .68 The House Report explained:

"Small enterprises whose total volume of sales or business done is less than $500,000 would no longer be covered. In eliminating several confusing tests to determine applicability of the act to various industries, the Committee continues to demonstrate it's [sic] support for the principle of a true small business exemption."

*Id*. at 17, quoting U.S. Cong., House, *Fair Labor Standards Amendments of 1989, Report Together with Minority and Additional Views, to Accompany H.R. 2710,* H.Rept. 101-260, Part I, 101st Congress., Sess/. September 26, 1989, p. 18. Plaintiffs would have us read the small business exemption out of the law, by joining other separate corporations that are under separate management.

El Tio Pio West Inc is not covered under the FLSA because its annual gross revenues are less than $500,000.  As reported on their Forms 1120S, Corporate Income Tax Returns for an S

Corporation: in 2012, gross revenues were $180,036; in 2013, gross revenues were $303,516; in 2014, gross revenues were $331,100; in 2015, gross revenues were $388,248; and in 2016, gross revenues were $483, 887. Thus, in each and every year from 2012 through 2016, gross revenues have been less than the $500,000 minimum for coverage under the FLSA.

IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANTS CARLOS ESPINOZA AND EL TIO PIO CORP.  NEITHER PLAINTIFF EVER WORKED FOR CARLOS ESPINOZA OR EL TIO PIO CORP, AND NEITHER DEFENDANT HAD OR HAS ANY OPERATIONAL CONTROL OVER TIO PIO WEST.

The Complaint fails to state a claim against Defendants Carlos Espinoza and El Tio Pio Corp.  Except for a conclusory allegation, the Complaint suggests no factual basis for including Carlos Espinoza and El Tio Pio Corp, 78 Willoughby Street Brooklyn NY as Defendants. Plaintiffs admit that Plaintiff Esquivel never worked at El Tio Pio Corp. Plaintiff Yepes falsely states that he worked for two weeks at El Tio Pio Corp.  It is a very vague allegation, with no dates or other details.

Defendant Carlos Espinoza has been the manager of El Tio Pio Corp, 78 Willoughby Street Brooklyn NY from 2002 to present.  El Tio Pio Corp is a separate corporation from Tio Pio West, with a separate FEIN number. Narcisa is not a shareholder of El Tio Pio Corp. El Tio Pio Corp has only three shareholders, Carlos Espinoza, Juan Patricio Espinoza and Javier Espinoza.

El Tio Pio Corp does not share employees with Tio Pio West.   Neither Plaintiff was ever employed by Carlos Espinoza or El Tio Pio Corp.  Plaintiff Yepes' allegation that he worked for El Tio Pio Corp for one week is simply untrue.

Carlos Espinoza makes the employment policies and practices for his own restaurant, El Tio Pio Corp, separately from those of Narcisa Espinoza at Tio Pio West.  Carlos and El Tio Pio Corp do not have operational control over Tio Pio West.

Carlos and El Tio Pio Corp, 78 Willoughby Street, never had any responsibility over hiring and firing, establishing schedules of the Plaintiffs, maintaining Plaintiffs' employee records, or determining the wages and compensation of Plaintiffs.  Carlos Espinoza is not responsible for the day-to-day operations of Tio Pio West.  Even though he is a minority shareholder of Tio Pio West, he is not responsible for its management or employment practices.  Narcisa Espinoza is the sole person responsible for managing and directing Tio Pio West.

Defendants Carlos Espinoza and El Tio Pio Corp do not constitute "employers" of the Plaintiffs within the meaning of the FLSA or NYLL.

V.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST PIO BAGEL 8 INC AND JAVIER ESPINOZA

The Complaint fails to state a claim against Pio Bagel 8 Inc, 136 Lawrence Street Brooklyn NY, and Javier Espinoza.

Plaintiffs admit that Plaintiff Esquivel never worked for Pio Bagel 8.  Plaintiffs incorrectly allege that Plaintiff Yepes worked for a vaguely-worded "approximately a month and a half" at Pio Bagel 8, with no details.  Narcisa and Javier Espinoza declare very specifically that he only worked for Pio Bagel 8 for about two days.  As a result of getting into a physical fight with a co-worker on Wednesday March 2, 2016, he was reprimanded and quit Tio Pio West.  He then went to ask for a job at Pio Bagel, and was hired on Thursday March 3rd, 2016.  He was hired to work from 7 am to 3 pm at $11 per hour.  He worked for about two days March 3rd and 4th 2016, and then quit because he was limited to eight hours per day, and returned to work at Tio Pio West on

Monday March 7, 2016.  Plaintiff's very vague allegations in the Complaint are simply not plausible.

Javier Espinoza has never been the manager of El Tio Pio West, and he has never had any responsibility over hiring and firing, establishing schedules of the Plaintiffs, maintaining Plaintiffs' employee records, or determining the wages and compensation of Plaintiffs at El Tio Pio West.  He is not responsible for the day-to-day operations of Tio Pio West.  Although he is a minority shareholder of Tio Pio West, Javier Espinoza is not responsible for its management or employment practices.  All the defendants and two of Narcisa's employees agree that Narcisa is the sole person responsible for managing and directing Tio Pio West.

Javier Espinoza and Pio Bagel 8 Inc do not have any power to exert any influence over budgeting, business operations, or the employment policies and practices of Tio Pio West.

While Javier Espinoza does sign the corporate tax returns for Tio Pio West, that is only because he speaks English well and is able to communicate with the accountant.  He does the bookkeeping for Tio Pio West, and provides the bookkeeping information to the accountant, for preparation of the company tax returns.  Because Narcisa's English is poor, she is not able to do this. Of course, it does not make sense to hire an interpreter to communicate with the accountant, so Javier Espinoza function as the intermediary with the accountant.

Pio Bagel 8 Inc opened in July 2015.  Javier Espinoza is the manager of Pio Bagel His employment policies at Pio Bagel 8 are different from those of Narcisa and Tio Pio West. For example, Javier Espinoza has a strict policy that employees are not to work overtime.  They are limited to a maximum of 40 hours per week, and some of his employees work part-time.  Also, he has a high-technology timekeeping machine that keeps track of the time each employee arrives

and departs by their fingerprints. Javier Espinoza and Pio Bagel 8 Inc keep track of each employee's hours using the most technologically-advanced methods.

Javier Espinoza also has an incentive program at Pio Bagel 8, while Narcisa and Tio Pio West do not have an incentive program.  To reward high-performing employees, Pio Bagel 8 Inc pays for a gym program at Planet Fitness.  Pio Bagel 8 also awards gift cards to outstanding employees.

Javier Espinoza and Pio Bagel 8 have a policy and practice to celebrate birthdays of all employees.  They have a list of birthdays, and for each birthday Pio Bagel 8 and Javier buy them a cake and they have a little party.

At Pio Bagel, employees who have not missed days of work and have not been late, get a raise. Javier Espinoza gives raises every six months.  He does performance reviews of each employee based on the following factors: lateness/absenteeism; hard work; good ideas; self-control; respect; and customer reviews.  Narcisa and Tio Pio West does not have any of these employee policies, so Pio Bagel 8 has totally different management, and its employees are not similarly situated.

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JUAN PATRICIO ESPINOZA

Juan Patricio Espinoza has never been a manager or supervisor of Tio Pio West, nor has he ever managed or supervised the Plaintiffs.  He does not have the power to make any decisions regarding operation of Tio Pio West.  There are only vague, boiler-plate allegations against him in the Complaint, which are simply not plausible and have no factual basis.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST "PATRICIA ESPINOZA"

There is no such individual as "Patricia Espinoza".  This person does not exist.  It appears that Plaintiffs were confused regarding the name and identity of Juan Patricio Espinoza, and so put both names Patricio and Patricia, hoping that one or the other would be correct.

VIII.   THE CORPORATE DEFENDANTS DO NOT CONSTITUTE A SINGLE ENTERPRISE.

El Tio Pio West Inc and the other two corporate defendants, Pio Bagel 8 Inc and El Tio Pio do not constitute a single enterprise.  Each is a separate business.  According to the FLSA:

> [e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments ....

29 U.S.C. § 203(r).

The three elements to be satisfied are: (1) related activities, (2) unified operation or common control, and (3) common business purpose. S*ee Brennan v. Arnheim & Neely*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973).

Related activities are those which are "the same or similar," S.Rep. No. 145, 87th Cong., 1st Sess. 41, reprinted in 1960 U.S.Code Cong. & Ad. News 1620, or are "auxiliary or service activities." 29 C.F.R. § 779.206(a) (quoting *Id*.). Auxiliary and service activities include "all activities which are necessary to the operation and maintenance of the particular business," including warehousing, bookkeeping, or advertising. *Id*.; *see* also *id*. at § 779.208. When different business entities are involved, the question is whether there is "`operational interdependence in fact.'" *See Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984) (quoting *Brennan v. Veterans Cleaning Serv., Inc.,* 482 F.2d 1362, 1367 (5th Cir.1973)). Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. *See Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692-93 (4th Cir.1990) (*see Easton Land & Dev.,* 723 F.2d at 1551-52; *see Veterans Cleaning Serv.*, 482 F.2d at 1366-67 (operational

14

interdependence and shared public image of three separate corporations involved in the "cleaning business")).

Here, each corporation operates independently of the other two, under separate management. Each corporation has a separate manager who is in charge of the day to day operations and employment policies and practices. None of the corporations provides services to either of the other corporations.

The federal regulations define "unified operation" as "combining, uniting, or organizing [related activities'] performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. "Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *id*. § 770.221. While ownership may be an important factor in determining common control, the focus of the inquiry is the performance of the related activities. *Odd Fellows Home Endowment Bd*., 912 F.2d at 693. Common control of performance may be established in the absence of common ownership. *See id*. §§ 779.222, 779.244.

The Defendants do not constitute a single operation under the statute. They do not have "common control", and do not operate as a "single economic unit". Each manager makes decisions separately for his or her restaurant, and each has their own particular employment policies and practices, and way of running their own operation. The other managers (Defendants Carlos, Javier and Juan Patricio Espinoza), do not have the power to determine the policies or operations of El

15

Tio Pio West.  Only Narcisa has the power to make decisions on day-to-day operations as well as the restaurant's employment policies and practices.

Javier's function of bookkeeping and acting as a liaison with the accountant because he speaks English are not managerial functions.  Javier does not have any power over El Tio Pio West's operations.

There is no "common control center" with the power to make binding decisions on all the establishments.

IX.   THE NAMED PLAINTIFFS AND THE OTHER EMPLOYEES ARE NOT SIMILARLY SITUATED, AND SO THE COURT SHOULD DENY CLASS CERTIFICATION UNDER 216(B)

Plaintiffs should be denied certification as a collective action, because the other employees of Tio Pio West, and the employees of the other two corporations, are not similarly situated pursuant to 29 U.S.C. §216(b). Certification of a "collective action" is a two-step process in the Second Circuit. *See Myers v. Hertz Corp.*, 624 F.3d 537 at 554-55 (2d Cir. 2010). At the first step (conditional certification), the Court authorizes notice to be sent to potential similarly situated plaintiffs. *Id.* at 555. Plaintiffs bear the burden of making a "modest factual showing" that the named initial plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." i*d*. (*see Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The burden may be satisfied through the pleadings and affidavits alone. *See Iglesias-Mendoza v. La Belle Farm. Inc*., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

Plaintiffs have not met that "modest" factual burden here.  They have not presented any facts at all to support their allegation of a common policy and practice.  Plaintiff's Complaint alleges, with no basis in fact, that Defendants "maintained a policy and practice of requiring

Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required…" This is simply not plausible.

Defendants have submitted substantial evidence to show that there was no common policy or plan regarding employees working overtime. Plaintiffs Yepes and Esquivel worked more than 40 hours per week at Tio Pio West because they constantly argued and demanded to work more hours. They worked more hours per week than any of the other employees. Two employees have declared that they work only 40 hours or less and that they are paid for all their hours.

The two other corporations and their managers have a policy that employees are not to work more than 40 hours per week and that they also have part-time employees who work fewer than 40 hours per week. It is clear from the declarations of Javier Espinoza as well as Carlos Espinoza, that the two other managers have different employment policies and practices, and so their employees are not similarly situated. Especially Javier has detailed the ways in which his employment practices at Pio Bagel differ from those of Narcisa at Tio Pio West.

The Plaintiffs' allegations regarding a purported policy to underpay tipped employees similarly fails, as simply boiler-plate language. Defendants have submitted detailed declarations showing that these allegations are simply not true.

Moreover, Plaintiffs are not representative of the other employees, as they both created a hostile work environment with their aggressive behavior and racial epithets and demeaning attitudes towards women.

Because each corporation has separate management with separate employee practices, there should be no class certification under 216(b). *See*, *Lynch v. City of New York*, Case No, 16-

cv-5677 (KBF) (SDNY 2017).  *See* also, *Durling, et al. v. Papa John's International, Inc*., Case No. 7:16-CV-03592 (CS)(JCM)(SDNY March 29, 2017).

      X.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER NEW YORK LABOR LAW.

The FLSA is not applicable to Defendant El Tio Pio West and the individual defendants because the $500,000 threshold is not met.  Because there is no claim under the FLSA, there is also no supplemental jurisdiction under 28 U.S.C. §1367 to entertain the claims under the New York Labor Law.

Thus, Defendants respectfully request that the Complaint be dismissed.  In the alternative, Defendants request that the Court deny certification of a collective action, and that Defendants be allowed additional time to file an answer, affirmative defenses and counter-claims against the Plaintiffs.

                                Respectfully submitted,

Dated: April 16, 2018                    By:       /s/ Heidi J. Meyers     
                                          Heidi J. Meyers, Esq. (HM-9696)
                                        Law Office of Heidi J. Meyers
                                        11 Broadway, Suite 925
                                        New York, N.Y. 10004
                                        Tel: (212) 791-4007
                                        Email: Heidimeyerslaw@gmail.com
                                        *Attorney for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JORGE YEPES *et al*

                                Plaintiffs,

                                                     1:18-CV-02038 (CM)

            -against-

EL TIO PIO WEST INC. *et al*

                                Defendants.
-----------------------------------------------------X

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

The Law Office of Heidi J. Meyers
11 Broadway, Suite 925
New York, NY 10004
Tel: (212) 791-4007
*Attorney for Defendants*